CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

02/13/2018
JULIA C. DUDLEY, CLERK
BY:  s/ F. COLEMAN
        DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| **TRACY DIANE KIDD,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No: 6:17-cv-3 |
| **NANCY A. BERRYHILL,** | ) |
| Acting Commissioner of Social Security, | ) By: Hon. Robert S. Ballou |
| Defendant. | ) United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Tracy Diane Kidd ("Kidd"), proceeding *pro se*, challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Kidd asserts that the Administrative Law Judge ("ALJ") erred by concluding that she did not have a physical impairment that rendered her disabled under the Act. Specifically, Kidd asserts that her condition following a T9 compression fracture prevents her from engaging in substantial gainful employment. I conclude that substantial evidence supports the ALJ's decision in its entirety. Consequently, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 17).[1]

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Kidd failed to demonstrate that she was disabled under the

---

[1] Kidd, a *pro se* plaintiff, did not file a motion for summary judgment. However, she filed a brief in support of her position. See Dkt. No. 13.

1

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Monroe, 826 F.3d. at 189; Mascio, 780 F.3d at 636.

## CLAIM HISTORY

Kidd filed for SSI and DIB on November 15, 2012, claiming that her disability began on January 1, 2008, R. 197–207, but subsequently amending the onset date to August 15, 2011 at her administrative hearing. R. 38. The Commissioner denied the application at the initial and

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

reconsideration levels of administrative review. R. 83–99, 103–24. On June 9, 2015, ALJ Brian B. Rippel held an administrative hearing to consider Kidd's disability claim. R. 34–82. Kidd was represented by an attorney at the hearing, which included testimony from vocational expert Jeannie Deal. Id.

On June 29, 2015, the ALJ entered his decision analyzing Kidd's claim under the familiar five-step process[3] and denying her claim for benefits. R. 11–26. The ALJ found that Kidd suffered from the severe impairment of status post T9 compression fracture. R. 14. The ALJ found that this impairment did not meet or medically equal a listed impairment. R. 14–15. The ALJ further found that Kidd retained the RFC to perform light work and can frequently climb ramps and stairs and occasionally balance, stoop, and crouch. R. 15. However, the ALJ found that Kidd can never climb ladders, ropes, or scaffolds, and should have only occasional exposure to workplace hazards, such as unprotected heights and moving machinery. Id.

The ALJ determined that Kidd could return to her past work as an "inspector/hand packer, production line solder [sic], small product assembler, electronics worker as actually and generally performed, order picker as actually performed, and inserting machine operator as generally performed." R. 24. The vocational expert testified that Kidd could perform other jobs that exist in the national economy such as laundry folder, cashier II, and mail clerk. R. 74. Thus, the ALJ concluded that Kidd was not disabled. R. 26. On June 29, 2016, the Appeals Council

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

denied Kidd's request for review. R. 1–4. This appeal followed.[4]

## ANALYSIS

**Relevant Medical History**

Kidd suffered a T9 compression fracture when she was thrown from a barrel being towed by a four-wheeler at a company picnic on November 16, 2007. R. 336, 346. Kidd did not seek any medical treatment for her back injury until January 2008. Id. She was about eighteen weeks pregnant at that time and did not receive X-rays at her initial visit. Id.

Kidd sought no other treatment for her back until July 2008 when she saw David S. Haga, M.D. R. 342. X-rays at that time showed "[n]o fractures or subluxation." Id. Dr. Haga referred Kidd to orthopedist Sara Ashley McCowen, M.D., who prescribed physical therapy and a home exercise plan. R. 346–47. Kidd was not evaluated by a doctor again until March 2010, when Dr. Haga ordered an MRI, which showed a "subacute compression conformity" of the T9 vertebra, and "[m]ild degenerative disc disease . . . [with] no significant spinal stenosis or neural foraminal narrowing." R. 341. Kidd returned to Dr. Haga in June 2010, who stated that the compression fracture in Kidd's T9 vertabra "should be completely healed now." R. 330. Dr. Haga recommended that Kidd resume physical therapy, but Kidd declined, stating that she was too busy. Id.

From January 2011 to April 2012, Kidd saw Frank Garcia, M.D., four times. See R. 325–29. During each examination, she had normal findings in her extremities and spine. Id. Dr. Garcia prescribed medication for pain, id., and reported that these medications gave her "fair

---

[4] While the Commissioner did not request oral argument in this case, Kidd filed a letter on August 21, 2017 requesting oral argument. See Dkt. No. 14. I find that a hearing will not aid in the decisional process and is thus unnecessary.

relief." R. 328. Although Kidd continued to complain of pain, Dr. McCowen described the T9 compression fracture as "asymptomatic" in April 2012, pointing out that Kidd could be experiencing residual muscle pain. R. 349. Kidd underwent an EMG in May 2012 and a whole-body bone scan in June 2012, both of which showed normal findings. R. 353–58.

Kidd did not seek any treatment for her back again until February 2013 when she returned to Dr. Garcia. R. 391–94. Dr. Garcia's examination of Kidd's lumbosacral spine revealed "no tenderness to palpitation, no pain, no swelling, edema or erythema of surrounding tissue and no paraspinous muscle spasm." R. 392. He also noted that Kidd's back pain is "currently stable," and noted that Kidd wanted to continue her medication. Id. Kidd received steroid injections in April and May 2013 from Dr. McCowen. R. 399. In May 2013, Dr. McCowen stated that Kidd's pain is not related to her spine, but is "likely muscular ligamentous in nature." Id. Dr. McCowen referred Kidd to a pain management specialist. R. 404.

Kidd first met with pain management specialist Brenda Waller, M.D., in July 2013. R. 411. Over the course of the next year and a half, Dr. Waller prescribed pain medication, recommended exercise, or both. R. 411–13, 417–18, 421–23, 426–35, 452–53, 456–59. As recently as January 28, 2015, Dr. Waller reported that Kidd "indicate[d] that she does not want to change her medications as she is functioning [throughout] the day with what she has." R. 457.

**Physical Impairments**

Throughout the relevant period and continuing through the date of this decision, Kidd maintains that she is unable to work because the back pain she experiences is debilitating and precludes her from engaging in substantial gainful activity. The ALJ rejected Kidd's claim for subjective complaints of debilitating back pain, stating that "it does not appear that the objective findings of record support limitations greater than the residual functional capacity given herein." R. 21. I find that substantial evidence supports the ALJ's decision.

5

The ALJ acknowledged that Kidd's 2008 accident caused a "subacute compression deformity and mild degenerative disease" but noted that this condition was "asymptomatic" in April 2012. R. 21, 23. The ALJ reviewed the medical evidence which routinely showed "normal findings" or "limited abnormalities" with Kidd's spine. Dr. McCowen ensured Kidd that the T9 compression fracture "should heal over the course of several months," and Dr. McCowen stated that she "did not believe her pain was emanating from a fracture at that level." R. 22–23, 353. A whole-body bone scan on June 8, 2012 was normal. R. 358. The ALJ noted that Kidd has been stable with medication management, and explained that her doctors' consistent directions to increase exercise indicates that Kidd is not as limited as she alleges. R. 22. The ALJ explained that "[t]he longitudinal record as a whole suggests that the claimant is a healthy individual. No surgery has been recommended for her back pain. There have been limited objective findings during the relevant period and her treatment has been quite routine and conservative." Id.

The ALJ explained that Kidd's daily activities and her reasons for not working render her subjective complaints of debilitating back pain not credible. The ALJ noted that Kidd testified at the administrative hearing that she "worked part time, cared for her son, managed her personal care needs independently and without difficulty, prepared meals, did household chores, drove, went out alone, and shopped in stores." Id. The ALJ noted that Kidd's reasons for not working, her part-time work activity, and her continued applications for employment through a temp agency "demonstrates a willingness and ability to work." Id. Specifically, Kidd told Dr. McCowen that "she was not currently employed, because she could not find anyone to stay with her son and that there was no cosmetology work available." Id.; R. 348. An individual is not disabled simply because they cannot find employment in their desired field. Additionally, the ALJ explained that Kidd's part-time work cutting hair out of her home and her testimony at the administrative hearing that she is looking for work weekly through a temp agency further

6

demonstrates Kidd's ability to "perform at least a range of light work" and further undermines her assertion that she cannot work at that physical level. R. 22. The ALJ concluded that had Kidd "been successful in her job search and had child care for her son[,] she would not currently be claiming disability, [indicating] that the reason for [Kidd's] continued unemployment is not solely the alleged impairments." Id.

Finally, the ALJ evaluated the medical opinions of the state agency physicians and Kidd's pain management specialist Dr. Waller, according more weight to the state agency physicians' opinion than Dr. Waller's opinion. R. 23–24. Social Security Regulations generally maintain that an ALJ must accord controlling weight to the opinion of the claimant's treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Here, however, the ALJ correctly declined to accord controlling weight to Dr. Waller's opinion.

On April 29, 2015, Dr. Waller found that Kidd could sit and stand/walk less than two hours in an eight-hour workday, can frequently carry items weighing less than ten pounds, can occasionally carry items weighing ten-to-twenty pounds, but can never carry anything weighing over twenty pounds. R. 437–38. Dr. Waller explained that Kidd can occasionally twist; can only rarely stoop, crouch, squat, and climb stairs; and can never climb ladders. R. 438. Overall, Dr. Waller expected Kidd would miss around two days of work per month. R. 439. The ALJ gave less weight to Dr. Waller's opinion because it is "[in]consistent with the medical evidence of record," further stating that "[i]t appears that [Dr. Waller] merely adopted [Kidd's] subjective complaints without balance or objectivity." R. 23. The ALJ reviewed the records of Kidd's visits with Dr. Waller, which showed that Kidd was doing well with medication and was actually encouraged to increase her physical activity through exercise. R. 23–24. The ALJ ultimately

7

concluded that "Dr. Waller's limited objective findings, conservative treatment, and recommendations that the claimant increase physical activity" are inconsistent with the medical evidence and therefore not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2). R. 24.

The ALJ explained that the state agency physician rendered opinions that are much more consistent with the objective evidence of record. R. 23. The Social Security Regulations state that a non-treating source's opinion can be credited only by evaluating three factors: "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(3)–(5)).

Gene Goodwin, M.D., found at the initial level that Kidd can: (1) sit and stand/walk around six hours in an eight-hour workday; (2) frequently carry ten pounds or less; (3) occasionally carry twenty pounds or less; (4) frequently balance; (5) occasionally climb ramps and stairs; (6) occasionally stoop, kneel, and crouch; and (7) never crawl or climb ladders, ropes, or scaffolds. R. 96–97. Dr. Goodwin explained that Kidd must avoid concentrated exposure to hazards. R. 98.

Robert McGuffin, M.D., rendered a similar opinion at the reconsideration level, finding that Kidd can: (1) sit and stand/walk around six hours in an eight-hour workday; (2) frequently carry ten pounds or less; (3) occasionally carry twenty pounds or less; (4) frequently climb ramps and stairs; (5) occasionally stoop, crouch, and balance; and (6) never kneel or crawl. R. 109–10. Dr. McGuffin also explained that Kidd must avoid concentrated exposure to hazards. R. 98.

The ALJ found that two of the three factors in 20 C.F.R. § 404.1527(c)(3)–(5) and highlighted by the Fourth Circuit in Brown supported according Dr. McGuffin's opinion great weight, because the opinion gave a "high quality explanation" supported by "a significant amount of substantiating evidence" and because the opinion was consistent with the record. Brown, 873 F.3d at 268 (citing 20 C.F.R. § 404.1527(c)(3)–(5)). The ALJ still found the state agency opinions to be the most credible, stating that they are "balanced, objective, and consistent with the evidence of record as a whole given evidence showing that [Kidd] has received routine and conservative treatment for her back pain with limited objective findings of record." R. 23.

The ALJ adequately addressed the medical evidence of record and concluded that Kidd is capable of performing a range of light work based on her normal test results, "asymptomatic" T9 compression fracture, and conservative treatment. The ALJ sufficiently explained that the evidence of Kidd's daily activities, her current work activity, and her consistent employment applications undermine the credibility of her subjective complaints and show that she is willing and able to work. Finally, the ALJ did not err under 20 C.F.R. § 404.1527 by giving less weight to the opinion of Kidd's treating physician, Dr. Waller, and instead giving the greatest weight to the state agency physicians, whose opinions were supported by objective medical evidence and were consistent with the record. Accordingly, because the ALJ "buil[t] an accurate and logical bridge from the evidence to his conclusion," Monroe, 826 F.3d. at 189, I find substantial evidence supports the ALJ's decision.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Kidd's claim for benefits

9

and in determining that her physical impairments would not significantly limit her ability to do basic work activities. Accordingly, I **RECOMMEND** that the Commissioner's decision be affirmed and the Commissioner's Motion for Summary Judgment (Dkt. No. 17) be **GRANTED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 12, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge